# UNITED STATES JUDICIAL PANEL
## on
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: DAILY FANTASY SPORTS MARKETING AND SALES PRACTICES LITIGATION | MDL No. 2677 |
| IN RE: DRAFTKINGS, INC., FANTASY SPORTS LITIGATION | MDL No. 2678 |
| IN RE: FANDUEL, INC., FANTASY SPORTS LITIGATION | MDL No. 2679 |

## TRANSFER ORDER

**Before the Panel:**[*] Before the Panel are three dockets involving allegations of improper or illegal conduct by the nation's two largest operators of online daily fantasy sports contests—DraftKings, Inc. and FanDuel, Inc. (collectively, the DFS Defendants). While the actions in this litigation involve a variety of allegations, these allegations generally fall into one of three categories. First, the "insider trading" actions allege that the DFS Defendants allowed their employees to participate in competitors' fantasy sports contests using non-public information that gave them an unfair advantage over other contestants.[1] Second, the "illegal gambling" actions allege that the online daily fantasy sports contests provided by the DFS Defendants violate the gambling prohibitions of one or more states. Third, the "bonus fraud" actions concern a promotional scheme by DraftKings in which it allegedly promised to match new players' initial account deposits up to

---

[*] At oral argument, it was announced that several Panel members have interests that normally would disqualify them under 28 U.S.C. § 455 from participating in the decision of this matter. Accordingly, the Panel invoked the Rule of Necessity, and all present Panel members participated in the decision of this matter in order to provide the forum created by the governing statute, 28 U.S.C. § 1407. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig. (No. II)*, 273 F. Supp. 2d 1353 (J.P.M.L. 2003); *In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 170 F. Supp. 2d 1356, 1357-58 (J.P.M.L. 2001). Additionally, certain Panel members who could be members of the putative classes in this litigation have renounced their participation in these classes and have participated in this decision. Judge Charles R. Breyer took no part in the decision of this matter.

[1] A subset of these insider trading actions also allege that the DFS Defendants allowed a small number of players (known as "apex predators" or "shark bettors") to use statistical modeling and computer programs and algorithms (variously called "bots," "spiders," "scrapers," or "scripts") to manage hundreds of entries at once and identify weak opponents, and that the DFS Defendants failed to disclose that such shark bettors have an unfair advantage over regular contestants.

-2-

$600. Plaintiffs allege that this promotional scheme was deceptive or fraudulent because, in practice, the only way a player would receive the full deposit match was to pay thousands of dollars in additional entry fees within a four-month period.

There are four motions under 28 U.S.C. § 1407 to centralize pretrial proceedings in this litigation. These motions were brought by three plaintiffs. In MDL No. 2677, plaintiff in an insider trading action pending in the Southern District of New York (*White*) moves to centralize all the actions against the DFS Defendants—regardless of whether those actions assert claims for insider trading, illegal gambling, or bonus fraud—in the Southern District of New York. In MDL Nos. 2678 (pertaining to DraftKings) and 2679 (pertaining to FanDuel), plaintiff in two illegal gambling actions pending in the Southern District of New York (*Khirani I* and *II*)[2] seeks centralization of the illegal gambling and insider trading actions in the Southern District of New York. Plaintiff Khirani now maintains that the actions against these two defendants should proceed in one centralized proceeding. Finally, plaintiffs in an action pending in the Southern District of Florida (*Gomez*) filed a second motion in MDL No. 2678 to centralize all actions pertaining to the DFS Defendants (regardless of the theory of liability) in the Southern District of Florida or, alternatively, in the Southern District of New York.

The four Section 1407 motions now before us together encompass seventeen actions. MDL No. 2677 consists of fourteen actions as listed on Schedule A. MDL No. 2678 consists of twelve actions as listed on Schedule B. MDL No. 2679 consists of eight actions as listed on Schedule C. Altogether, there are eighty actions at issue in these three dockets, either listed on the motion or noticed as a related action,[3] pending in thirty districts. All but one of these actions (the *Wicksman* action pending in the District of Massachusetts) are common to all three dockets. Approximately forty-two of these actions involve insider trading allegations, thirty-six involve illegal gambling allegations, and eight involve bonus fraud allegations. Several actions allege both insider trading and either illegal gambling or bonus fraud claims.

The responding parties take a variety of positions with respect to centralization and the selection of the transferee district for this litigation. Plaintiffs in eleven actions and potential tag-along actions support centralization in the Southern District of New York. Plaintiffs in seven actions and potential tag-along actions suggest centralization in the District of Massachusetts. The DFS Defendants also support centralization in the District of Massachusetts.[4] Plaintiffs in five actions and potential tag-along actions suggest centralization in the Southern District of Illinois. The

---

[2] Plaintiff Khirani filed two actions in the Southern District of New York—one against DraftKings and one against FanDuel—alleging that defendants' operation of daily fantasy sports contests in New York constitutes illegal gambling under New York law.

[3] These related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1, and 7.2.

[4] Defendant Saahil Sud (an alleged shark bettor defendant named in some actions) does not oppose centralization, but likewise supports selection of the District of Massachusetts as the transferee district.

-3-

Northern District of Alabama, the District of Colorado, the District of Connecticut, and the Eastern District of Louisiana are each supported by plaintiffs in one action or potential tag-along action. Several parties propose the Southern District of Illinois and the Southern District of New York as alternative transferee fora. As to the scope of the MDL, several of the plaintiffs and the DFS Defendants support centralization of all the actions in a single MDL regardless of the theory of liability. Several other plaintiffs request that the Panel exclude from the centralized proceedings actions involving allegations of illegal gambling, bonus fraud, or both, arguing that those actions do not share sufficient common questions of fact with the insider trading actions to benefit from centralization and that efficient management of such disparate actions is not feasible.[5]

Additionally, a number of plaintiffs oppose inclusion of their respective actions in any centralized proceeding. Plaintiffs in three bonus fraud actions pending in the Southern District of Illinois (*Hemrich*) and the District of Massachusetts (*Gardner* and *Wicksman*) argue that the bonus fraud actions involve challenges to a discrete aspect of DraftKings' marketing and, as a consequence, these actions do not share common questions of fact with the insider trading or illegal gambling actions and do not present a risk of duplicative discovery or inconsistent pretrial rulings. Plaintiffs in *Gardner* and *Hemrich* also argue that informal coordination and cooperation among counsel and the involved courts is a feasible alternative to centralization for the relatively few bonus fraud actions.

Plaintiffs in five illegal gambling actions pending in the Eastern District of Arkansas (*Price* and *Ritchie*), the Middle District of Florida (*Steiner*), and the District of New Mexico (*DeGroot* and *Lahoff*) argue that inclusion of those actions in the MDL would require the transferee court to consider unique state anti-gambling prohibitions, which would undermine any potential efficiencies gained through centralization. Plaintiffs in the *Steiner* and *DeGroot* actions also argue that inclusion of their actions is inappropriate because they are brought under state private attorney general provisions by plaintiffs who did not participate in defendants' daily fantasy sports contests. The New Mexico plaintiffs additionally argued at the hearing that a motion for preliminary injunction has been filed in New Mexico state court and that the ruling on this motion would be determinative of the actions pending in the District of New Mexico.

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization in the District of Massachusetts will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this

---

[5] Plaintiffs in two actions (the *McDaid* action in the Southern District of New York and the *Bandy* action in the Northern District of Oklahoma) argue that all actions should be centralized before a single judge, but that the insider trading, illegal gambling, and bonus fraud actions should be coordinated, rather than consolidated. As we have explained before, the Panel determines only whether actions sharing common questions of fact should be centralized under Section 1407. The decision to coordinate or consolidate actions in an MDL is a matter of the transferee court's discretion. *See In re Bear Creek Techs., Inc., ('722) Patent Litig.*, 858 F. Supp. 2d 1375, 1377 (J.P.M.L. 2012).

-4-

litigation. These actions share factual questions arising from plaintiffs' allegations that: (a) the DFS Defendants allowed their employees to participate in competitors' fantasy sports contests using non-public information that gave them an unfair advantage over other contestants; (b) the DFS Defendants operate online daily fantasy sports contests in contravention of state anti-gambling statutes; (c) DraftKings conducted an allegedly deceptive and fraudulent initial deposit matching scheme; or (d) some combination thereof.

While these actions involve differing theories of liability, such differences are not a bar to centralization where common factual issues exist. *See In re Bank of New York Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2012). Here, regardless of the theories asserted, the actions will involve common discovery regarding the nature of the DFS Defendants' online daily fantasy sports contests, their advertising and promotions, and their internal policies and practices. At oral argument, the parties represented that the DFS Defendants have relatively few employees and that it is anticipated that at least some employees will be witnesses in all the actions. Additionally, there is substantial overlap among the asserted putative classes in these actions (the insider trading and bonus fraud actions are predominantly brought on behalf of putative nationwide classes). Further, all of the actions involve plaintiffs seeking similar relief from the DFS Defendants—namely, refunds of the losses that plaintiffs sustained while participating in the online daily fantasy sports contests.[6] Centralization, therefore, will eliminate duplicative discovery, prevent inconsistent pretrial rulings, particularly with respect to class certification, and conserve the resources of the parties, their counsel, and the judiciary.

We acknowledge that the arguments to exclude the bonus fraud and illegal gambling actions from this MDL have some logic. Nevertheless, we find that the benefits of centralizing all three types of actions at issue in this litigation are significant. Alternatives to this approach, such as informal coordination or cooperation among the parties and courts with respect to common discovery or pretrial motions, are less practicable given the large number of actions and courts. And, as with any MDL, the transferee judge may account, at his discretion, for any differences among the actions through the use of appropriate pretrial devices, such as separate tracks for discovery or motion practice. *See, e.g., In re Androgel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1378-80 (J.P.M.L. 2014). Should the transferee judge determine that discovery and other pretrial proceedings related to the common issues has been completed, he may suggest Section 1407 remand of actions to their transferor courts for more individualized discovery and trial, if necessary. *See In re Darvocet, Darvon & Propoxyphene Prods. Liab. Litig.*, 780 F. Supp. 2d 1379, 1381 (J.P.M.L. 2011).

Also, the arguments opposing inclusion of specific potential tag-along actions in this MDL are premature. *See In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prods. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011). Should the Panel issue an order conditionally transferring

---

[6] Even the *Steiner* and *DeGroot* actions are brought under private attorney general statutes on behalf of citizens of Florida and New Mexico who lost money participating in the DFS Defendants' contests.

-5-

those actions to the MDL, plaintiffs at that time—informed by our decision here—may move to vacate the conditional transfer order. *See* Panel Rule 7.1.

We conclude that the District of Massachusetts is the appropriate transferee district for this litigation. This district is supported by both defendants and plaintiffs in at least seven actions. A significant number of related actions that encompass all three theories of liability are pending in the district. The District of Massachusetts presents a convenient and accessible forum with a significant connection to this litigation. DraftKings is headquartered in the district and the individual defendants reside either in the district or nearby, which will facilitate discovery. By appointing the Honorable George A. O'Toole, Jr., to preside over this matter, we select an experienced jurist with the willingness and ability to steer this litigation on an efficient and prudent course.

IT IS THEREFORE ORDERED that the actions listed on Schedules A, B, and C, and pending outside the District of Massachusetts are transferred to the District of Massachusetts and, with the consent of that court, assigned to the Honorable George A. O'Toole, Jr., for coordinated or consolidated pretrial proceedings under MDL No. 2677.

IT IS FURTHER ORDERED that the motions in MDL Nos. 2678 and 2679 are terminated.

IT IS FURTHER ORDERED that MDL No. 2677 is renamed *In re: Daily Fantasy Sports Litigation*.

PANEL ON MULTIDISTRICT LITIGATION

_____
Sarah S. Vance
Chair

Marjorie O. Rendell    Lewis A. Kaplan
Ellen Segal Huvelle    R. David Proctor
Catherine D. Perry

**IN RE: DAILY FANTASY SPORTS MARKETING
AND SALES PRACTICES LITIGATION**          MDL No. 2677

## SCHEDULE A

Central District of California

SPIEGEL, ET AL. v. DRAFTKINGS, INC., ET AL., C.A. No. 2:15-08142
MARTIN v. DRAFTKINGS, INC., ET AL., C.A. No. 5:15-02167

Southern District of Florida

GOMEZ, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-23858
COOPER v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-23870

Southern District of Illinois

GUARINO v. DRAFTKINGS, INC., ET AL., C.A. No. 3:15-01123

Eastern District of Louisiana

GENCHANOK v. FANDUEL, INC., ET AL., C.A. No. 2:15-05127

District of Massachusetts

HAROLDSON, ET AL. v. DRAFTKINGS INC., C.A. No. 1:15-13581
BELTON v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-13602

Southern District of New York

JOHNSON, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-07963
WEAVER, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-08110
WHITE v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-08123
BROWN v. DRAFTKINGS, INC., C.A. No. 1:15-08165
MCDAID, ET AL. v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-08181
BELTON v. FANDUEL, INC., ET AL., C.A. No. 1:15-08234

**IN RE: DRAFTKINGS, INC., FANTASY SPORTS LITIGATION**     MDL No. 2678

## SCHEDULE B

<u>Southern District of Florida</u>

GOMEZ, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-23858
COOPER v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-23870

<u>Southern District of Illinois</u>

GUARINO v. DRAFTKINGS, INC., ET AL., C.A. No. 3:15-01123

<u>Eastern District of Louisiana</u>

GENCHANOK v. FANDUEL, INC., ET AL., C.A. No. 2:15-05127

<u>District of Massachusetts</u>

WICKSMAN v. DRAFTKINGS, INC., C.A. No. 1:15-13559

<u>Southern District of New York</u>

JOHNSON, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-07963
WEAVER, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-08110
KHIRANI v. FANDUEL, INC., C.A. No. 1:15-08119
WHITE v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-08123
BROWN v. DRAFTKINGS, INC., C.A. No. 1:15-08165
MCDAID, ET AL. v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-08181
KHIRANI v. DRAFTKINGS, INC., C.A. No. 1:15-08193

**IN RE: FANDUEL, INC., FANTASY SPORTS LITIGATION** — MDL No. 2679

## SCHEDULE C

<u>Southern District of Florida</u>

GOMEZ, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-23858

<u>Southern District of Illinois</u>

GUARINO v. DRAFTKINGS, INC., ET AL., C.A. No. 3:15-01123

<u>Eastern District of Louisiana</u>

GENCHANOK v. FANDUEL, INC., ET AL., C.A. No. 2:15-05127

<u>Southern District of New York</u>

JOHNSON, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-07963
WEAVER, ET AL. v. FANDUEL, INC., ET AL., C.A. No. 1:15-08110
KHIRANI v. FANDUEL, INC., C.A. No. 1:15-08119
WHITE v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-08123
MCDAID, ET AL. v. DRAFTKINGS, INC., ET AL., C.A. No. 1:15-08181